INGALLS, Appellant, v. GUNDERSON et al, Respondents.

(157 N. W. 1055.)

(File No. 3895.    Opinion filed May 27, 1916.)

1.  Quieting Title—Adverse Possession—Claiming to True Line— Majority Rule—Instructions.

In a suit to determine adverse claims to realty, defendant having set up title by adverse possession, and claiming title both because of what he claims to be the true location of the government corners, and also because of his alleged adverse possession, held, that an instruction that adjacent proprietors are supposed to claim to the true line, but, if it appears from a visible boundary mark like a fence, and also from improvements maintained, that he intended to claim title up to the fence, whether it was the true line or not, so as to give plaintiff notice that that was his claim, his possession was adverse, and would ripen into title under the statute of limitations,

was within what is known as the majority rule, and was there-
fore as favorable to defendant as he was entitled to request.

**2. Same—Adverse Possession—Title Under "Majority Rule"—In-
tent Controlling—Sufficiency of Evidence.**

In a suit to determine adverse claims to realty to which
defendant asserted adverse title by possession and claiming the
land because, as he contended, the lines located by him were
the true lines, and not merely provided such lines were the
true lines, **held,** that the evidence warranted a finding· that
defendants' possession had ripened into title by prescription;
the facts being weighed by the court under the majority rule,
but expressing no opinion as to whether that rule, under which
the question of intent controls, or the minor rule, under which
possession, even though maintained under a mistake as to the
true line and with no intent to claim other than to the true
**line, is the correct rule.**

Appeal from Circuit Court, Minnehaha County. Hon. Joseph
W. Jones, Judge.

Action by James L. Ingalls, against Ole Gunderson and A.
N. Helgerson, to determine adverse claims to realty. From a
judgment for defendants, and from an order denying a new trial,
plaintiff appeals. Affirmed.

*Parliman & Parliman, and Bates & ·Bates,* for Appellant.

*Aikens & Judge,* for Respondent.

(1) To point one of the opinion, Appellant cited: Griffin
v. Brown, (Ia.) 149 N. W. 833; Kellar v. Harrison, (Ia.) 128
N. W. 851; Hess v. Rudder, (Ala.) 67 Am. St. Rep. 182; Ald-
rich Mining Co. v. Pearce, (Ala.) 68 So. 900; Shanks v. Wil-
liams, (Kan.) 144 Pac. 1007; Skansi v. Novak, (Wash.) 146
Pac. 160; Preble v. Maine Ry. Co., 85 Me. 260; 1 R. C. L.,
Sec. 50, and note; 4 R. C. L., Sec. 71, and note.

Respondents cited: Dake & Ward, 150 N. W. 50, and also
relied upon Hess, the Shanks, and the Skausi cases cited by
appellant, supra; and also cited: Ruling Case Law, Secs. 48, 49,
50; Bowers v. Ledgerwood, 64 Pac. (Wash.) 936; Holmes v.
Judge, 87 Pac. (Utah); McCormick, et al v. Sorenson, et al, 107
Pac. (Wash.) 1055.

WHITING, J. This is an action brought to determine ad-
verse claims to certain real estate situated in Minnehaha county.
Plaintiff claims the land by virtue of a deed describing a strip
of land 50 rods wide extending from the west line of the east

half of the northwest quarter of a certain section east to the Sioux river. Defendant claims a portion of the land in dispute as a part of the west half of said northwest quarter, which tract we will designate as the "eighty." He claims the remaining portion in dispute as being land south of a line running 50 rods south of and parallel to the north line of said section. Defendant's father settled on the eighty in the year 1867. He afterwards conveyed the same to defendant. Defendant purchased from another party all the land lying east of the eighty and south of a line 50 rods south of the north line of the section. All the land in dispute has been in the actual, open, and notorious possession of defendant or his grantors for a much longer time than is necessary to acquire title thereto through adverse possession. Defendant claims that, when his father settled on the eighty, the original government mounds at the northwest and the northeast corners of the northwest quarter were perfectly visible; that the accompanying pits were visible; and that the original government stakes were then in the mounds. Conceding that the government mounds were located at the points claimed by defendant, the land in question belongs to the defendant, because included within the descriptions in his deeds. But defendant claims title both because of what he claims to be the true location of the government corners, and also because of his alleged adverse possession. In the year 1895 the township authorities had the township resurveyed. The surveyor treated the mounds at the northwest and northeast corners of the quarter as lost, and located the northwest corner some 50 rods west and 15 rods south of the point claimed by defendant as the true location of the government mounds, and the northeast corner some 30 rods west and 18 rods south of the point claimed by defendant as the true location of the government mound. The jury found in favor of the plaintiff on the question of the location of the government mounds, but found in favor of the defendant on the question of adverse possession. Prior to the time of making his 1895 survey, the same surveyor, in the year 1891, made a survey of this township, locating the corners exactly where he located them in 1895. At the time of the 1891 survey he saw the defendant, and the defendant at that time advised him where he claimed the government corners to be. From 1891 down to the commencement of this action—a period

of over twenty years—defendant had knowledge of the fact of this resurvey, and that the corners as located thereby were at the points now claimed by plaintiff. At the time of settling upon this land defendant's father erected his buildings in the northwest corner of the eighty, and in the extreme northwest part thereof, both near the north and the west lines, he set out trees. These buildings were from time to time replaced by new buildings until there is now a valuable set of buildings in the northwest corner of said eighty. In 1869 defendant's father constructed a north and south fence along the east line of the eighty. In 1893, and over 20 years before this action was commenced, defendant rebuilt such fence, and at a point 50 rods from the north end of such fence he built another fence running east to the Sioux river. If the corners as claimed by defendant were the true government corners, these fences would correctly mark the west and south lines of plaintiff's land. If the plaintiff should be given the said land claimed by him, the effect would be to throw his west line and the north line of the section enough farther to the west and to the south as to leave defendant possessed of but a small fraction of the eighty, and to leave without the boundary lines of defendant's land all his buildings and a large part of his grove.

[1] But two questions need be considered by us: (1) The correctness of an instruction given by the trial court; (2) whether, applying the instruction given to the facts of this case, the verdict of the jury can be sustained. The instruction complained of was as follows:

"As I stated before, adjacent proprietors are supposed ordinarily to claim to the true line; but, if it appears from a visible boundary mark like a fence, a substantial fence, and if it also appears, in addition to that, from improvements maintained, that Mr. Gunderson intended to claim title to that property up to that fence, whether it was the right line or not, and if the circumstances and character of his occupation was such as to give notice to Ingalls that that was his claim, and if he did so occupy that property for more than 20 years before the bringing of this suit, then he would obtain title to the property in dispute by statute of limitations by 20 years' use under adverse possession. But to maintain that adverse possession of title under the circum-

stances it was necessary that the occupation must be such as to satisfy the jury that he claimed up to that point as his land, whether it was the true line or was not the true line, and that his occupation was such as to give notice to Ingalls that that was his claim."

It will be noticed that particular stress was laid upon the fact that, in order for defendant to prevail, the jury must find that he occupied the land in dispute with an intent to claim up to the line claimed by him, "whether it was the true line or was not the true line." This brought this instruction clearly within what is known as the majority rule, and was therefore as favorable to the appellant as he could possibly have asked. I R. C. L. Adverse Possession, §§ 48-51; Rudolph v. Peters, 35 App. D. C. 438, Ann. Cas. 1912A, 446, and notes in Ann. Cases.

[2] Were the facts such as to establish adverse possession under the above instruction? The authorities agree that each case must stand upon its own facts; that no fixed rule can be laid down governing cases where title is based upon adverse possession. But it is agreed that under what is known as the majority rule the question of intent controls; while under the minority rule possession for the requisite time, even though maintained under a mistake as to the true line and with no intent to claim other than to the true line, might result in the acquiring of title. We will weigh the facts of this case solely by the majority rule, expressing no opinion as to which is the correct rule. Under this rule the question of intent controls; while under the minority rule misapprehension or mistake as to the boundaries of his land, with no intention to claim as his own that which does not belong to him, but only to claim to the true line, wherever it may be, he does not hold adversely; but the mere fact that possession may originate in a mistake as to the location of the true boundary will not prevent the running of the statute and the acquiring of title by adverse possession, if the party in possession intends to claim the land to the line occupied by him as his own, and his possession of it is open and exclusive for the statutory period. In the present case the defendant was not claiming the disputed land merely provided the lines located by him were the true lines; but he was at all times, both before and after the resurvey, claiming the land because, as he contended, such lines were the true lines.

This presents a far different case than where parties mistakingly place a fence or locate a line where it should not have been placed or located because they were misinformed or in ignorance of the line as fixed by a survey and place such fence or fix such line without any intent to claim the same as a boundary if, in fact, it should prove not to be the true line. Here defendant, from the beginning, claims to have acted with absolute knowledge of the data from which the true lines could be and, as he claims, were fixed. There is nothing to show that he ever had any other intent than to claim the lines in question as the true lines and to claim title to all the land up to such lines. Decisions rendered in cases wherein there was no dispute, but merely a mistake, as to the true boundary line, can have no application to the facts of this case. If defendant believed the corners testified to by him to be the government mounds, certainly a clear intent to claim title to the fences is shown. If after 1891 he realized that he was mistaken, then certainly his possession became adverse. From the year 1891 for a period of some 22 years, or until this action was brought, defendant, with a full knowledge of the first resurvey and that under such resurvey the land in dispute was located outside of the descriptions contained in his deeds, continued to hold open adverse possession of the land in question. There could be no clearer or more satisfactory evidence that he intended to claim this land in dispute whether the lines claimed by him were the true lines or were not the true lines. The facts of this case established title by adverse possession within the rule announced by the court in its instruction.

The judgment and order appealed from are affirmed.